1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RAY MEDINA,                              No.  2:25-cv-0475 DC AC P

12                   Plaintiff,

13          v.                                 ORDER

14    ANZAR, et al.,

15                   Defendants.

16

17          Plaintiff is a state inmate who filed this civil rights action pursuant to 42 U.S.C. § 1983

18    without a lawyer.  Pending before the court are plaintiff's first amended complaint ("FAC"),

19    request to proceed in forma pauperis, request for screening, and a motion to disqualify the

20    undersigned.  ECF Nos. 2, 8, 14, 16.  Because plaintiff has submitted a declaration showing that

21    he cannot afford to pay the entire filing fee, plaintiff's motion to proceed in forma pauperis is

22    granted.[1]  See 28 U.S.C. § 1915(a)(2); ECF Nos. 2, 4.  For the reasons discussed below,

23    plaintiff's request for screening and motion to disqualify the undersigned will be denied.

24    _____

25    [1]  This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that
      are taken from the inmate's trust account rather than in one lump sum.  28 U.S.C. §§ 1914(a),
26    1915(b)(1).  As part of this order, the prison is required to remove an initial partial filing fee from
      plaintiff's trust account.  See 28 U.S.C. § 1915(b)(1).  A separate order directed to the appropriate
27    agency requires monthly payments of twenty percent of the prior month's income to be taken
      from plaintiff's trust account.  These payments will be taken until the $350 filing fee is paid in
28    full.  See 28 U.S.C. § 1915(b)(2).

                                                   1

1    I.    Statutory Screening of Plaintiff's First Amended Complaint[2]

2         A.    Legal Standard

3         The court is required to screen complaints brought by prisoners seeking relief against "a

4    governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  A

5    claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v.

6    Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on

7    an indisputably meritless legal theory or factual contentions that are baseless.  Id. at 327.  The

8    critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable

9    legal and factual basis.  Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by

10   statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

11        In order to avoid dismissal for failure to state a claim a complaint must contain more than

12   "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a

13   cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).  In other words,

14   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

15   statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

16   court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

17   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

18   inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation

19   omitted).  When considering whether a complaint states a claim, the court must accept the

20   allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the

21   complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421

22   (1969) (citations omitted).

23   ////

24   ////

25   ////

26   _____

27   [2]  Before the court could screen the complaint, plaintiff filed a First Amended Complaint
     ("FAC"), pursuant to Federal Rule of Civil Procedure 15(a)(1).  See ECF No. 8.  Because the
     FAC replaces the original complaint, Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), the court
28   will screen the FAC.

1          B. <u>Factual Allegations of the First Amended Complaint</u>

2          The FAC alleges that defendants Jones (warden), Gipson (director), John Doe (chief

3   medical officer), Anzar, Mendoza, Singh, Andrews, Stewart, Shamoeil, Martinez, Rivera, Bello,

4   Padilla, and Salgado violated plaintiff's First, Eighth, and Fourteenth Amendment rights.  ECF

5   No. 8.  The FAC specifically alleges the following.

6          Plaintiff was diagnosed with a complex form of Post-Traumatic Stress Disorder

7   ("PTSD").  <u>Id.</u> at 5.  On or around April 18, 2024, after plaintiff engaged in self-harm behavior,

8   plaintiff was referred from Enhanced Outpatient ("EOP") level of care at California State Prison

9   Sacramento ("CSP-Sac") to a crisis bed at California Health Care Facility ("CHCF") for I.C.F.

10  level of care.  <u>Id.</u> at 5.  While at CHCF, he filed a 602-grievance complaining about inadequate

11  mental health care for his complex PTSD and was retaliated against with a false rules violation

12  report 115 ("RVR") and discharged back to CSP-Sac.  <u>Id.</u>

13         At CSP-Sac, plaintiff again engaged in cutting and hanging and was referred to a crisis

14  bed in Vacaville.  <u>Id.</u>  On December 2, 2024, the doctors referred him back to CHCF for

15  "ACUTE level of care."  <u>Id.</u>

16         On December 20, 2024, at CHCF, while plaintiff was housed in B2A acute unit, defendant

17  Anzar was hostile and verbally aggressive.  <u>Id.</u> at 6.  On January 6, 2025, defendant Anzar cursed

18  at and bullied plaintiff about his legal paperwork and told him to "stop writing 602s or else."  <u>Id.</u>

19  at 6-7.  Plaintiff lost it, broke a glass window, and began to cut himself in an attempt to get Anzar

20  to open the door so that they could fight.  <u>Id.</u> at 6.  In response, defendant Stewart put plaintiff on

21  one-on-one suicide watch.  <u>Id.</u>  Defendant Anzar continued to approach plaintiff's cell and curse

22  at and ridicule him while no supervisors were present.  <u>Id.</u>  Shortly thereafter, defendant

23  Mendoza[3] opened plaintiff's cell door and entered with defendant Anzar.  <u>Id.</u> at 7.  Plaintiff told

24

---

25  [3]  A few times while describing the incident that occurred in his cell on January 6, 2025, plaintiff appears to accidentally refer to defendant "Mendoza" as "Medina.".  <u>See</u> ECF No. 8 at 7.
26  Because it is very unlikely plaintiff is referring to himself in the third person, appears to be describing the actions of someone else entering his cell with defendant Anzar, and describes
27  actions by Anzar and Mendoza, the court assumes plaintiff is referring to defendant "Mendoza" when he accidentally uses the name "Medina."  If this is incorrect, plaintiff should promptly
28  inform the court.

3

them to get out of his cell; that he was not well.  Id.  They did not listen.  Id.  They grabbed him and a fight ensued.  Id.  Defendant Mendoza used an illegal choke hold to choke plaintiff, kicked him in the ribs with her boot fracturing his rib, and shoved her madox baton into plaintiff's rectum.  Id.  Defendant Anzar punched and bit plaintiff.  Id.  Defendants Shamoeil and Martinez arrived, told plaintiff defendants "they" should have notified "us" when plaintiff broke his window and started to self-harm; "they" should not have run into your cell like that.  Id.

The next day, defendants Singh and Martinez videotaped plaintiff's injuries.  Id.  One day later, defendant Singh told plaintiff that "if you go forward with PREA complaint" against Mendoza "he will destroy my legal property and make my stay at CHCF unpleasant."  Id. at 8-9.  As a result, plaintiff dropped his PREA claim against Mendoza.  Id. at 9.

A week later, plaintiff got his property back, but his TV set was missing.  Id.  Plaintiff had a 602 pending.  Id.  Defendant Singh told plaintiff to "stop 602s."  Id.

On January 16, 2025, at plaintiff's Interdisciplinary Treatment Team ("IDTT") meeting, defendants Andrews, Stewart and clinician endorsed plaintiff for placement at Atascadero State Hospital for a higher level of care because CHCF does not have the resources, time, or training to treat complex PTSD.  Id. at 10.  Defendant Andrews told plaintiff, "you must stop your 602 grievances.  We heard about your complaints."  Id.  A month later, defendant Stewart told plaintiff, "we recinded [sic] your Atascadero referral we told you to stop writing 602 – complaints."  Id.

In plaintiff's current placement, no one was properly trained to treat PTSD or a complex form and there were no groups with therapeutic value.  Id. at 11.  Because defendants Andrews, Stewart, and Chief Medical Officer, John Doe, had access to plaintiff's medical records, they knew that rescinding plaintiff's referral to Atascadero would deny him access to adequate mental health care.  Id. at 18.

On February 3, 2025, defendant Rivera denied plaintiff due process and obstructed justice when he refused to access plaintiff's "page #3 of [his] I.E. report [q]uestions of requested info and witnesses."  Id. at 8.  A week later, defendant Bello alleged to give plaintiff copies of his 837 packet, two 7219 medical reports.  Id. at 8.  Three days later defendant Bello finally served

plaintiff with the documents and told plaintiff that her supervisors told her not to give plaintiff the documents, that her supervisors were trying to sweep it under the rug, and that defendant Shamoeil, as a responding officer to the incident, should not have denied plaintiff the investigative reports.  Id.  According to defendant Bello, defendant Shamoeil was forcing defendants Bello and Rivera to do his dirty work in an attempt to stop plaintiff's 602s.  Id. at 15.

On February 14, 2025, defendant Shamoeil dismissed the false RVR and off the record told plaintiff that "these officers messed up" and that he was "not getting involved."  Id. at 8.  On February 21, 2025, a nurse informed plaintiff that they were looking into his 602 complaints for groups with therapeutic value and that they would start a group on Thursdays with a licensed psychologist to address topics plaintiff had identified.  Id. at 12.

Defendants Jones, Gipson, and John Doe all knew plaintiff was at serious risk of being subjected to excessive force in B yard because "numerous class-members" have been attacked and seriously injured by correctional officers in B yard at CHCF.  Id. at 18.  Supervisors and defendants "willfully without provocation enter patients cells, sucker punch, beat, slam, and maliciously and sadistically injure patient population."  Id. at 14.  Defendants Jones, Gipson, and John Doe failed to properly train and respond reasonably to stop the pattern of abuse.  Id. at 14, 18.

In January 2025, after Anzar and Mendoza attacked plaintiff, plaintiff witnessed two other incidents in B2A unit where defendants Anzar, Mendoza, and Salgado physically attacked other inmates and defendants Padilla, Bello, Martinez, Rivera, and Shamoeil wrote false RVRs to cover it up and defendant Singh approved one.  Id. at 9-10.

Defendants conspired and colluded with one another to retaliate against plaintiff.  Id. at 16.  To prevent further retaliation and plaintiff from continuing to document the misconduct in B2A, plaintiff was rehoused in B6A.  Id. at 10.

By way of relief, plaintiff seek a declaratory judgment, an order to adequately treat plaintiff's complex PTSD, and monetary damages.  Id. at 21.

////

////

5

1        C. Claims for Which a Response Will Be Required

2             After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that

3     plaintiff has adequately stated cognizable Eighth Amendment claims against defendant(s) Anzar

4     and Mendoza for excessive force and/or failure to protect based on the alleged incident in

5     plaintiff's cell on January 6, 2025; defendant Mendoza for the alleged sexual assault on plaintiff

6     on January 6, 2025; and defendants Andrews and Stewart for deliberate indifference to plaintiff's

7     need for a higher level of care.  Plaintiff also adequately First Amendment claims against

8     defendants Singh, Andrews, and Stewart for retaliation against plaintiff for pursing 602

9     grievances and/or a PREA claim.

10        D. Failure to State a Claim

11            However, the allegations in the FAC are not sufficient to state any claims for relief against

12    defendants Jones, Gipson, John Doe, Salgado, Padilla, Martinez, Rivera, Shamoeil, or any other

13    claims than the ones listed in the prior section against defendants Anzar, Mendoza, Singh,

14    Andrews and Stewart.

15            The FAC fails to state claims against defendants Jones, Gipson, and John Doe because

16    they appear to be named solely based on their supervisory roles as warden, director, and chief

17    medical officer.  There is no respondeat superior liability under § 1983; each defendant can be

18    liable only for their own actions.  The FAC does not allege defendants Jones, Gipson, and/or John

19    Doe personally participated in or directed the alleged violations; and the allegations regarding

20    defendants Jones, Gipson, and John Doe's subjective knowledge are speculative, conclusory, and

21    thus insufficient.  To state a failure to train claim and/or deliberate indifference to health and

22    safety claim, plaintiff must allege *facts* (not conclusions) from which the court can infer *each*

23    defendant *actually knew* (not should have known) officers in B2A unit were physically attacking

24    inmates, retaliating against inmates who filed 602 grievances, and/or that more or different

25    training was necessary to prevent the alleged constitutional violations *before* the alleged

26    constitutional violations occurred.  Here, the only factual allegations in the FAC concerning their

27    potential knowledge are two alleged incidents of violence towards other inmates in B2A unit *after*

28    ////

the alleged incident of violence towards plaintiff.  These allegations, therefore, are insufficient to establish the requisite knowledge.

The FAC also fails to state any claims against defendants Martinez, Salgado, and Padillo because the FAC does not link defendants Martinez, Salgado, and Padillo to any violations *against plaintiff*.  To the extent plaintiff is attempting to assert claims against defendants Martinez, Salgado, and Padillo based on their conduct towards *other prisoners on behalf of other prisoners* (e.g. inmates Godman and Hampton), as a pro se litigant, plaintiff may not do so.  The same is true to the extent he is attempting to assert claims against defendants Rivera, Bello, Shamoeil, Anzar, Mendoza and/or Singh based on their conduct towards other prisoners.

To the extent plaintiff is attempting to state a First Amendment retaliation claim based on his transfer from CHCF to CSP-Sac based on him filing a 602 grievances, he fails to state a claim because he does not link any defendant to this conduct.  To the extent plaintiff is attempting to state an Eighth Amendment violation against defendant Anzar based on defendant Anzar's verbal abuse, he fails to do so because verbal insults do not violate the Eighth Amendment. Additionally, to the extent plaintiff is attempting to state a failure to train and/or failure to protect claim against defendant Shamoeil, he fails to do so because, as discussed above, there is no respondent liability under § 1983 and the FAC fails to sufficiently allege defendant Shamoeil had the requisite culpable state—deliberate indifference.

The FAC also fails to state a Fourteenth Amendment due process violation against defendants Rivera, Bello, and/or Shamoeil because prisoners do not have a liberty interest in being free from false accusations of misconduct (false RVRs) and plaintiff fails to allege any harm resulting from the lack of process, much less that the disciplinary, which was dismissed, imposed an atypical and significant hardship on him;

Lastly, because plaintiff has been transferred out of CHCF, ECF No.16, and plaintiff fails to state a cognizable claim against any official (in their official capacity) with the authority to order treatment of plaintiff's complex PTSD at his new facility or within the California Department of Corrections and Rehabilitation, plaintiff's claim for injunctive relief is not cognizable.

It appears to the court that plaintiff may be able to allege facts to fix these problems. Therefore, plaintiff has the option of filing an amended complaint.

E. Options from Which Plaintiff Must Choose

Based on the court's screening, plaintiff has a choice to make. After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**The first option available to plaintiff is to proceed immediately against defendants Anzar and Mendoza on Eighth Amendment excessive force and failure to protect claims; defendant Mendoza on Eighth Amendment sexual abuse claim; defendants Andrews and Stewart on Eighth Amendment medical deliberate indifference claims; and defendants Singh, Andrews, and Stewart on First Amendment retaliation claims. By choosing this option, plaintiff will be agreeing to voluntarily dismiss defendants Jones, Gipson, John Doe, Salgado, Padilla, Martinez, Rivera, Shamoeil, and any other claims against defendants Anzar, Mendoza, Singh, Andrews, and Stewart. If plaintiff elects the first option, the court will proceed to immediately serve the complaint and order a response from defendants Anzar, Mendoza, Andrews, Stewart, and Singh.**

**The second option available to plaintiff is to file an amended complaint to fix the problems described in Section I.D. against defendants Jones, Gipson, John Doe, Salgado, Padilla, Martinez, Rivera, and/or Shamoeil. If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.**

II. Request for Screening

Plaintiff requests that the court screen the FAC. In light of the above, plaintiff's requests for screening will be denied as moot.

III. Motion to Disqualify

Plaintiff moves to disqualify the undersigned magistrate judge from this action because she has not screened the complaint, her failure to screen the complaint "no doubt" means "she is in contact with C.H.C.F. officials" and that "she probably goes to dinner with CHCF officials," plaintiff's "complaint is frowned upon within her friendly circle," and no good reason exists to let

8

1    the case sit on the docket "if IFP and venue and jurisdiction is proper and complete."  ECF No. 15

2    at 4-5.

3        Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States

4    shall disqualify himself in any proceeding in which his impartiality might reasonably be

5    questioned."  Section 144 provides "[w]henever a party to any proceeding in a district court

6    makes and files a timely and sufficient affidavit that the judge before whom the matter is pending

7    has a personal bias or prejudice either against him or in favor of any adverse party, such judge

8    shall proceed no further therein."  28 U.S.C. § 144.  If the affidavit is legally sufficient, a judge

9    cannot proceed and must assign a different judge to hear the matter.  See id.; see also United

10    States v. Sibla, 624 F.2d 864, 867 (9th Cir. 1980).  However, if the affidavit under § 144 lacks

11    sufficiency, the judge at whom the motion is directed can determine the matter and deny recusal.

12    See United States v. Scholl, 166 F.3d 964, 977 (9th Cir. 1999) (citations omitted).

13        Under both recusal statutes, the substantive standard for legal sufficiency is "whether a

14    reasonable person with knowledge of all the facts would conclude that the judge's impartiality

15    might reasonably be questioned."  United States v. Studley, 783 F.2d 934, 939 (9th Cir. 1986)

16    (quoting Mayes v. Leipziger, 729 F.2d 605, 607 (9th Cir. 1984) (internal quotations omitted)).

17    "To provide grounds for recusal, prejudice must result from an extrajudicial source.  A judge's

18    previous adverse ruling alone is not sufficient bias."  Mayes v. Leipziger, 729 F.2d 605, 607 (9th

19    Cir. 1984) (internal citation omitted).

20        The undersigned declines to recuse herself.  Plaintiff provides no evidence in support of

21    his conclusory and speculative assertions that the undersigned is biased or prejudiced towards

22    plaintiff.  Moreover, a careful review of plaintiff's motion and supporting declaration reveal that

23    plaintiff's motion is based entirely on his dissatisfaction with the timeliness of the screening of

24    his complaint.  The timeliness of the screening of plaintiff's operative complaint, however, is

25    within the normal range of time currently expected for new prisoner cases in this district, which

26    has been and continues to be one of the busiest district court's in the United States, with the

27    highest number of prisoner civil actions filed in 2024.

28    ////

9

1      IV.    Plain Language Summary of this Order for Party Proceeding Without a Lawyer

2             The court is granting your application to proceed in forma pauperis.  This does not mean

3      you do not have to pay a filing fee.  Instead, it means you will only have to pay the $350.00 filing

4      fee rather than the full $405.00 fee, and you will pay the $350.00 through monthly payments that

5      are taken from your inmate trust account rather than a one-time up-front payment.

6             The court is denying your request to screen the complaint because this order renders the

7      request unnecessary and denying your request to disqualify the undersigned magistrate judge

8      from this case because you have not established valid grounds for disqualification.

9             The court has screened your complaint and determined that the FAC sufficiently states

10     Eighth Amendment excessive force and failure to protect claims against defendants Anzar and

11     Mendoza, an Eighth Amendment sexual abuse claim against defendant Mendoza, an Eighth

12     Amendment medical deliberate indifference claim against defendants Andrews and Stewart, and

13     First Amendment retaliation claims against defendants Singh, Andrews, and Stewart.  The FAC

14     does not state *any* claims against defendants Jones, Gipson, John Doe, Salgado, Padilla, Martinez,

15     Rivera, and/or Shamoeil, or *any other* claims against defendants Anzar, Mendoza, Andrews,

16     Stewart, and Singh.

17            With respect to next steps, you have a choice to make.  You may either (1) proceed

18     immediately on your excessive force and failure to protect claims against defendants Anzar and

19     Mendoza, sexual abuse claim against defendant Mendoza, medical deliberate indifference claims

20     against defendants Andrews and Stewart, and retaliation claims against Singh, Andrews, and

21     Stewart, and voluntarily dismiss the other claims; or, (2) try to amend the complaint.  To decide

22     whether to amend your complaint, the court has attached the relevant legal standards that may

23     govern your claims for relief.  See Attachment A.  If you choose to file an amended complaint,

24     pay particular attention to the legal standards attached to this order and be sure to provide facts

25     that show exactly what each defendant did to violate your rights.  If you subsequently file an

26     amended complaint, the court will need to screen the amended complaint.  In doing so, the court

27     will not refer back to any prior complaint.  As such, any claims and information not in the

28     amended complaint will not be considered.

10

V.    CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's requests for screening (ECF No. 14) is DENIED as MOOT.

2.  Plaintiff's motion to disqualify the magistrate judge (ECF No. 15) is DENIED.

3.  Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is GRANTED.

4.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith.

5.  The first amended complaint does not state claims against defendants Jones, Gipson, John Doe, Salgado, Padilla, Martinez, Rivera, and Shamoeil, and only states the claims identified in Section I.D. of this order against defendants Anzar, Mendoza, Andrews, Stewart, and Singh.

6.  Plaintiff has the option to proceed immediately on his Eighth Amendment excessive force, failure to protect, sexual assault, and medical deliberate indifference claims against defendants Anzar, Mendoza, Andrews, and Stewart, and his First Amendment retaliation claims against defendants Andrews, Stewart, and Singh, as set forth in Section I.D. above, or to file an amended complaint.

7.  Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

8.  If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of defendants Jones, Gipson, John Doe, Salgado, Padilla, Martinez, Rivera, Shamoeil, and any claims against defendants Anzar, Mendoza, Andrews, Stewart, and Singh *other than* the ones found to state a claim against them in Section I.D. of this order.

DATED: November 5, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11

1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   RAY MEDINA,                              No.  2:25-cv-0475 DC AC P

11                  Plaintiff,

12        v.                                  NOTICE OF ELECTION

13   ANZAR, et al.,

14                  Defendants.

15   Check one:

16   _____ Plaintiff wants to proceed immediately on his Eighth Amendment excessive force, failure

17        to protect, sexual abuse, and medical deliberate indifference claims against defendants

18        Anzar, Mendoza, Andrews and Stewart, and his First Amendment retaliation claims

19        against defendants Andrews, Stewart, and Singh without amending the complaint.

20        Plaintiff understands that by choosing this option, defendants Jones, Gipson, John Doe,

21        Salgado, Padilla, Martinez, Rivera, Shamoeil, and any other claims against defendants

22        Anzar, Mendoza, Andrews, Stewart, and Singh will be voluntarily dismissed without

23        prejudice pursuant to Federal Rule of Civil Procedure 41(a).

24   _____ Plaintiff wants time to file an amended complaint.

25   DATED:_____

26                                          _____
                                            Ray Medina
27                                          Plaintiff pro se

28

                                            1

1    <u>Attachment A</u>

2        This Attachment provides, for informational purposes only, the legal standards that may

3    apply to your claims for relief.  Pay particular attention to these standards if you choose to file an

4    amended complaint.

5    I.    <u>Legal Standards Governing Amended Complaints</u>

6        If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions

7    about which he complains resulted in a deprivation of his constitutional rights.  <u>Rizzo v. Goode</u>,

8    423 U.S. 362, 370-71 (1976).  Also, the complaint must specifically identify how each named

9    defendant is involved.  <u>Arnold v. Int'l Bus. Machs. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981).

10   There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

11   connection between a defendant's actions and the claimed deprivation.  <u>Id.</u>; <u>Johnson v. Duffy</u>,

12   588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official

13   participation in civil rights violations are not sufficient."  <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266,

14   268 (9th Cir. 1982) (citations omitted).

15       Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his

16   amended complaint complete.  <u>See</u> Local Rule 220.  This is because, as a general rule, an

17   amended complaint replaces the prior complaint.  <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967)

18   (citations omitted), <u>overruled in part by</u> <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 928 (9th Cir.

19   2012).  Therefore, in an amended complaint, every claim and every defendant must be included.

20   II.   <u>Legal Standards Governing Substantive Claims for Relief</u>

21       A.  <u>Pro Se Litigant Representation</u>

22       "It is well-established that the privilege to represent oneself pro se provided by [28

23   U.S.C.] § 1654 is personal to the litigant and does not extend to other parties or entities."  <u>Simon</u>

24   <u>v. Hartford Life, Inc.</u>, 546 F.3d 661, 664 (9th Cir. 2008); <u>see also</u> <u>C.E. Pope Equity Tr. V. United</u>

25   <u>States</u>, 818 F.2d 696, 697 (9th Cir. 1987) ("Although a non-attorney may appear in propria

26   persona in his own behalf, that privilege is personal to him.  He has no authority to appear as an

27   attorney for others than himself.").

28   ////

1

1    B.  Section 1983 Liability

2         i.  Personal Involvement

3    "Liability under § 1983 must be based on the personal involvement of the defendant,"

4    Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d

5    164, 167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil

6    rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)

7    (citations omitted).  "A person 'subjects' another to the deprivation of a constitutional right,

8    within the meaning of section 1983, if he does an affirmative act, participates in another's

9    affirmative acts, or omits to perform an act which he is legally required to do that causes the

10   deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.

11   1978) (citation omitted).  In other words, to state a claim for relief under section 1983, plaintiff

12   must link each individual defendant with some affirmative act or omission that shows a violation

13   of plaintiff's federal rights.

14        ii.  Supervisory Liability

15   "There is no respondeat superior liability under section 1983," Taylor v. List, 880 F.2d

16   1040, 1045 (9th Cir. 1989) (citation omitted), which means that a supervisor cannot be held

17   responsible for the conduct of his subordinates just because he is their supervisor.  "A supervisor

18   is only liable for constitutional violations of his subordinates if the supervisor participated in or

19   directed the violations, or knew of the violations and failed to act to prevent them."  Id.

20        iii.  Failure to Train

21   The inadequacy of training may serve as a basis for liability under section 1983 where the

22   failure to train amounts to deliberate indifference to the rights of persons with whom the

23   subordinates come into contact.  Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991).  To

24   satisfy the deliberate indifference standard, plaintiff "must allege facts to show that the

25   [defendant] 'disregarded the known or obvious consequence that a particular omission in their

26   training program would cause . . . employees to violate citizens' constitutional rights.'"  Flores v.

27   County of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014) (citing Connick v. Thompson, 563

28   U.S. 51, 51-52 (2001)).  A pattern of similar violations is ordinarily necessary to state a claim for

2

1   failure to train, because absent such a pattern the individual or entity cannot have been aware that

2   their failure to train would likely cause further constitutional violations.  Id.; see also Davis v.

3   City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir. 1989) (same standard for inadequate training

4   applies to inadequate supervision).

5        Isolated incidents by two deputies do not suffice to put the sheriff on "'notice that a course

6   of training is deficient in a particular respect,' nor that the absence of such a course 'will cause

7   violations of constitutional rights.'"  Flores, 758 F.3d at 1159 (quoting Connick, 563 U.S. at 62);

8   see also Lake v. City of Vallejo, No. 2:19-cv-1439 DAD KJN, 2023 WL 4086885, at *13, 2023

9   U.S. Dist. LEXIS 106255, at *38 (E.D. Cal. June 20, 2023) (plaintiff "must—at a minimum—

10  allege more than two incidents that predate the incident involving plaintiff to be considered

11  plausible notice to defendant . . . that there was a failure to train").

12       C.  First Amendment – Retaliation

13       To state a claim for retaliation, a plaintiff must allege defendants (1) took adverse action

14  against plaintiff (2) because of (3) plaintiff's protected conduct, and that the action (4) would chill

15  an inmate of reasonable firmness from future protected conduct and (5) lacked a legitimate

16  correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

17       An adverse action is an act (or failure to act) by prison officials which causes harm, and

18  "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out."

19  Brodheim v. Cry, 584 F.3d 1262, 1269-70 (9th Cir. 2009) (emphasis in original).  To show

20  defendants retaliated "because of" the plaintiff's actions, the plaintiff must show the defendants

21  were motivated by his protected conduct.  See Crawford-El v. Britton, 523 U.S. 574, 592 (1998)

22  (proof of defendant's general animosity toward plaintiff would not necessarily show her conduct

23  was motivated by plaintiff's protected conduct).  Protected conduct refers to acts taken by the

24  plaintiff that are protected by the First Amendment and may include lawsuits and grievances, as

25  well as verbal complaints or threats to sue.  See Rhodes, 408 F.3d at 567 (prisoners have a First

26  Amendment right to file prison grievances and pursue civil litigation); Shepard v. Quillen, 840

27  F.3d 686, 688 (9th Cir. 2016) (prisoners have "First Amendment right to report staff

28  misconduct"); Jones v. Williams, 791 F.3d 1023, 1036 (9th Cir. 2015) (threats to sue constitute

3

1    protected conduct); <u>Entler v. Gregoire</u>, 872 F.3d 1031, 1039 (9th Cir. 2017) (form of complaint,

2    including verbal, "is of no constitutional significance").

3        D.  <u>Eighth Amendment</u>

4            i.  <u>Conditions of Confinement</u>

5        "The Constitution does not mandate comfortable prisons, but neither does it permit

6    inhumane ones." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (internal quotation marks and

7    citation omitted).  "[A] prison official violates the Eighth Amendment only when two

8    requirements are met." <u>Id.</u> at 834.

9        "First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  <u>Id.</u> (quoting

10   Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  To be sufficiently serious, "a prison official's act or

11   omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  <u>Id.</u>

12   (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)).  "[R]outine discomfort inherent in the

13   prison setting" does not rise to the level of a constitutional violation.  <u>Johnson v. Lewis</u>, 217 F.3d

14   726, 732 (9th Cir. 2000).  Rather, "extreme deprivations are required to make out a[n] [Eighth

15   Amendment] conditions-of-confinement claim." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).

16   "More modest deprivations can also form the objective basis of a violation, but only if such

17   deprivations are lengthy or ongoing." <u>Johnson</u>, 217 F.3d at 732.

18       Second, the prison official must subjectively have a "sufficiently culpable state of mind,"

19   "one of 'deliberate indifference' to inmate health or safety." <u>Farmer</u>, 511 U.S. at 834 (citations

20   omitted).  "[T]he official must both be aware of facts from which the inference could be drawn

21   that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837.  He

22   must then fail to take reasonable measures to lessen the substantial risk of serious harm.  <u>Id.</u> at

23   847.  If a prison official's response to a known risk is reasonable, they "cannot be found liable."

24   <u>Id.</u> at 845.  Negligent failure to protect an inmate from harm is not actionable under § 1983.  <u>Id.</u> at

25   835.

26       Allegations of only verbal harassment do not state an Eighth Amendment claim.  <u>Somers</u>

27   <u>v. Thurman</u>, 109 F.3d 614, 622 (9th Cir. 1997) (stating that "the exchange of verbal insults

28   between inmates and guards is a constant, daily ritual observed in this nation's prisons" of which

1    "we do not approve," but which do not violate the Eighth Amendment); Oltarzewski v. Ruggiero,

2    830 F.2d 136, 139 (9th Cir. 1987) (vulgar comments do not violate Eighth Amendment).

3                    ii.    Excessive Force

4         "[T]he Eighth Amendment places restraints on prison officials, who may not . . . use

5    excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing

6    Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using

7    excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry

8    is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or

9    maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers,

10   475 U.S. 312 (1986)). When determining whether the force was excessive, the court looks to "[1]

11   the extent of injury suffered by an inmate," as well as "[2] the need for application of force, [3]

12   the relationship between that need and the amount of force used, [4] the threat 'reasonably

13   perceived by the responsible officials,' and [5] 'any efforts made to temper the severity of a

14   forceful response.'" Id. at 7 (quoting Whitley, 475 U.S. at 321). While a de minimis use of force

15   does not violate the Eighth Amendment, a plaintiff does not have to suffer a serious injury to state

16   a claim for relief. Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously

17   beaten by guards does not lose his ability to pursue an excessive force claim merely because he

18   has the good fortune to escape without serious injury.").

19                   iii.   Sexual Harassment

20        "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the

21   Eighth Amendment." Wood v. Beauclair, 692, F.3d 1041, 1046 (9th Cir. 2012) (citations

22   omitted). "[S]exual assault serves no valid penological purpose," and "an inmate need not prove

23   that an injury resulted from sexual assault in order to maintain an excessive force claim under the

24   Eighth Amendment." Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir. 2020) (citations

25   omitted). To state an Eight Amendment sexual assault claim, a plaintiff must demonstrate "that a

26   prison staff member, acting under color of law and without legitimate penological justification,

27   touched the prisoner in a sexual manner or otherwise engaged in sexual conduct for the staff

28   member's own sexual gratification, or for the purpose of humiliating, degrading, or demeaning

                                                5

1     the prisoner." <u>Id.</u>

2                   iv.   <u>Medical Deliberate Indifference</u>

3        "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

4 must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091,

5 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). This requires plaintiff

6 to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

7 could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

8 (2) "the defendant's response to the need was deliberately indifferent." <u>Id.</u> (some internal

9 quotation marks omitted) (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

10        A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure

11 to respond to a prisoner's pain or possible medical need and (b) harm caused by the

12 indifference." <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060). Deliberate indifference "may appear

13 when prison officials deny, delay or intentionally interfere with medical treatment, or it may be

14 shown by the way in which prison physicians provide medical care." <u>Hutchinson v. United</u>

15 <u>States</u>, 838 F.2d 390, 394 (9th Cir. 1988) (citation omitted). "[A] complaint that a physician has

16 been negligent in diagnosing or treating a medical condition does not state a valid claim of

17 medical mistreatment under the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 106.

18        A difference of opinion between an inmate and prison medical personnel—or between

19 medical professionals—regarding the appropriate course of treatment does not by itself amount to

20 deliberate indifference to serious medical needs. <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058 (9th

21 Cir. 2004); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989). A difference of opinion rises to

22 the level of deliberate indifference when "the chosen course of treatment 'was medically

23 unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive

24 risk to [the prisoner's] health.'" <u>Toguchi</u>, 391 F.3d at 1058 (alteration in original) (quoting

25 <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996)).

26                   v.   <u>Failure to Protect</u>

27        "[A] prison official violates the Eighth Amendment only when two requirements are met.

28 First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or

omission must result in the denial of the minimal civilized measure of life's necessities." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." <u>Id.</u> (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety." <u>Id.</u> at 837. He must then fail to take reasonable measures to lessen the substantial risk of serious harm. <u>Id.</u> at 847. Negligent failure to protect an inmate from harm is not actionable under § 1983. <u>Id.</u> at 835.

Officers have a duty to intervene when fellow officers violate the constitutional rights of a suspect or other citizen. <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1289 (9th Cir. 2000), <u>as amended</u> (Oct. 31, 2000) (citation omitted). At the same time, however, they may only be held liable for failure to intervene if they had an opportunity to do so. <u>See id.</u> at 1289-90 (citing <u>Bruner v. Dunaway</u>, 684 F.2d 422, 426-27 (6th Cir. 1982) (holding officers who were not present at time of alleged assault could not be held liable in a Section 1983 action)). The failure to intervene violates a prisoner's Eighth Amendment rights. <u>See Robins v. Meecham</u>, 60 F.3d 1436, 1442 (9th Cir. 1995).

E. Fourteenth Amendment

i. Due Process Clause

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). Rather, with respect to prison disciplinary proceedings that include the loss of good-time credits, an inmate must receive (1) twenty-four-hour advanced written notice of the charges against him, <u>id.</u> at 563-64; (2) "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action," <u>id.</u> at 564 (citation and internal quotation marks omitted); (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," <u>id.</u> at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, <u>id.</u> at 570; and (5) a sufficiently impartial fact finder, <u>id.</u> at 570-71. A finding of guilt must also be "supported by

1    some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985).

2           The Wolff court noted that its decision was not meant to "suggest . . . that the procedures

3    required . . . for the deprivation of good time would also be required for the imposition of lesser

4    penalties such as the loss of privileges." Wolff, 418 U.S. at 571 n.19.  When a prisoner does not

5    lose any good-time credits, he may also demonstrate that he is entitled to the due process outlined

6    in Wolff by alleging facts showing that the disciplinary "impose[d] atypical and significant

7    hardship on [him] in relation to the ordinary incidents of prison life." Sandin v. O'Conner, 515

8    U.S. 472, 484 (1995).

9                    ii.   False Disciplinary

10          Prisoners do not have a liberty interest in being free from false accusations of misconduct.

11   See Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) ("there are no procedural safeguards

12   protecting a prisoner from false retaliatory accusations").

13                  F.   Injunctive Relief

14         "A federal court may issue an injunction if it has personal jurisdiction over the parties and

15   subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons

16   not before the court." Zepeda v. United States Imm. & Naturalization Serv., 753 F.2d 719, 727

17   (9th Cir. 1983).

18

19

20

21

22

23

24

25

26

27

28